Richardson, J.
I concur fully in the decree, upon the merits of complainant’s bill.
Dr. Van Lew has no grounds to set aside the judgment of Mrs. Parr; because she purchased his bonds, not only for a valuable consideration, but under a confidence, permitted, if not purposely raised, by Van Lew himself — that he had no defence to the bonds, and because she was ignorant of the contingent remainders, that may eventually take the lands in question from Van Lew. It follows, clearly, from such facts, whatever be the possible claims of Van Lew to an equitable defence to the bonds, if still in the hands of David F. Myers, that it would be inequitable, and encourage unfair dealing, to permit him to succeed in such a defence, as against such an assignee of the bonds. Her judgment at law must, therefore, stand unaffected by the strife of Van Lew and Myers — and Van Lew be remitted to his warranty of title received from Myers, and relied upon at the time of his purchase.
2. Upon the question, whether Van Lew had or had not a good title to the lands against the contingent remaindermen, by reason of the sales ordered by the Court of Equity in 1835, i. e. whether such sales, being unconditional in terms, will bar the contingent remainders, although the parties interested in such remainders were not represented, I give no final opinion ; as it is not essential to the decision of the case — and the court ought still to avoid deciding upon the possible future rights of such absentees. Let them first lay in their claims.
3. But upon the question, which I understand caused the appeal to the Court of Errors, to wit: whether it was necessary, as a principle of law, that before the purchaser, Van Lew, could recover, by reason of a title paramount to the one he received from D. F. Myers, he must have been actually evicted by force of such paramount title ? Upon this question I cannot hesitate. It depends upon an important and clear principle, that ought not to be questioned in our courts.
The series of our decisions, enumerated and expounded by Judge O’Neall, which began in 1792, and continued ever since, has finally established this proposition in the laws of South Carolina : That whenever, in the sale of lands, the seller makes a general warranty of title, in the usual form of our conveyances of real estate, and a subsisting paramount title at law to the same lands belongs to a third person — as, for instance, an older grantee of the same lands; in such cases, the purchaser is not *354 obliged to wait until he shall have been evicted by force of such paramount title, but may recover against the seller, upon the fact, that such paramount title has been found in such third party. Because, such paramount title is, by our decisions, per se, a breach of the warranty of the seller, and co-effective with, eviction. The seller warrants the purchaser’s superior title.
Now, then, this being the law of such cases, it follows, that whenever a case is presented in equity, proper and suitable in all other respects for that jurisdiction, the bill will not be dismissed on the ground, merely, that the purchaser has not been actually evicted by force of such paramount title.
I admit that in an English Court of Chancery, and in many of the States, such a case would be dismissed, for the want of the actual anterior eviction of the purchaser. The principle of reasoning there, is precisely the same as for the converse decree in South Carolina ; i. e. the same rule, “ equitas sequitur legemf governs ; and equity decides, as the rule of law has been established in the judicial forum of law.
For illustration : let us suppose that the English law Judges had, ever since the year 1792, adopted and established the South Carolina rule, or the Parliament had enacted it; would we, after such a change in the law of the warranty, hear of any estoppelT because there had been no actual eviction 7 and would not the title paramount be holden equivalent to actual eviction, wherever that rule had obtained at law 7 I think there can be no doubt of this.
The argument is not that other courts, and commentators on law, have drawn unjust or illegal conclusions from their premises, but that our courts cannot, without error, adopt the same conclusions from our own legal premises, that have obtained since 1792, and dispensed with the necessity of proving a prior eviction.
Perhaps I need not have thus briefly condensed the profound considerations and arguments of my brethren, or indexed the drift and conclusion from such arguments. But, in a case so calculated to introduce the understanding proper and conducive to decisions formed in ihe same fundamental legal premises, I would contribute my conviction after the very able argument, that this has become the law of such general warranty of lands in South Carolina, and must govern all our courts equally, as a settled principle of such warranties.